SUTTON, Circuit Judge.
*283 Two cars collided in a busy intersection in a Detroit suburb. The police decided that one of the drivers, Dawn Green, ran a red light, and said so in the accident report, though they opted not to give her a ticket. Green sued the three officers and their employer, the City of Southfield, alleging that the investigation of the accident violated the U.S. Constitution. The district court granted summary judgment to the defendants. We affirm.
I.
One afternoon in October 2012, Green was driving west on Eight Mile Road in Southfield, Michigan, twenty minutes north of Detroit. William Patterson was heading northbound on Southfield Road, taking his grandson to a medical appointment. The two vehicles collided in the intersection, Patterson's SUV ramming the driver-side door of Green's sedan. After impact, the SUV blocked the intersection and Green's car came to rest at a traffic median several hundred feet away.
According to Green, she was briefly knocked unconscious and, after coming to, was dazed and in intense pain, struggling to "recall[ ] everything that occurred." R. 185-6 at 7. Other drivers pulled over to help Green, disoriented and with glass in her face, climb out of her car and lay down on the median.
Southfield Officer Rafid Maya arrived at the scene soon after the accident. He spoke briefly with Patterson, who was out of his car and didn't look injured. Maya then went to Green, still on her back on the median, appearing stiff and unable to move her limbs. Because Green "didn't respond too many times," saying just "a few words here and there," Maya refrained from asking many questions after getting her identification. R. 185-3 at 6-7.
Traffic Specialist Keith Birberick arrived within a few minutes of Maya. By then, paramedics were looking after Green, and Birberick initially blocked traffic at Patterson's end of the crash scene. When he came over to Green, she was on a gurney in an ambulance. He spoke to Green briefly, as Maya told him Green couldn't remember the accident. Patterson relayed that he had just entered the intersection with a green light when his car "was struck" by Green's car. R. 185-7 at 5-6. Birberick did not speak to Patterson's fifteen-year-old grandson, because he believed that, as a passenger, the grandson was not an "independent witness" and that the accident was not severe enough to warrant significant investigation. Id. at 6. Birberick determined that the physical evidence-the degree and location of the vehicles' respective damage, the absence of skid marks around Green's vehicle, and the *284 spot where Green's vehicle came to rest-corroborated Patterson's account.
Birberick did not consider the accident serious enough for criminal proceedings or a traffic ticket, so he did not complete a police incident report. He instead filled out the crash report that the State of Michigan requires for highway-safety planning purposes when car accidents lead to injuries. Mich. Comp. Laws §§ 257.622, 257.624(1). In the form's "Hazardous Action" box, Birberick wrote "none" for Patterson and "disregarded traffic [signal]" for Green. R. 185-2 at 2-3. Michigan law provides that such crash reports "shall not be available for use in a court action." Mich. Comp. Laws § 257.624(1).
Green was hospitalized for several days. When she saw the accident report, she contacted Detective Mark LaBrosse at the Southfield Police Department, insisting it was Patterson who ran the light and that she had an eye witness, Douglas Harris, to back her up. LaBrosse followed up with Harris and Patterson as well as with Officer Maya and Specialist Birberick, but LaBrosse and his supervisor (Sergeant Brian Bassett) decided against amending the report. LaBrosse simply added Harris as a potential witness and ordered the records bureau to attach his affidavit to the report.
Green sued Patterson in state court, eventually settling her negligence claim after discovery, case evaluation, and court-ordered facilitation. She then filed this § 1983 and § 1985 action against officers Birberick, LaBrosse, Bassett, and the City of Southfield, alleging that the investigation of the accident violated her equal protection rights under the Fourteenth Amendment and her right of access to the courts under the First (and Fourteenth) Amendment. The district court concluded that the officers deserved qualified immunity and granted summary judgment to several of the defendants. The court refused each side's request for sanctions against the other. Green appeals, and the defendants cross-appeal.
II.
Qualified immunity protects police officers from liability for actions that do not violate clearly established rights apparent to a reasonable officer standing in their shoes. Harlow v. Fitzgerald , 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). At issue on summary judgment is whether a material-fact dispute stands in the way of the officers' qualified-immunity defense or whether they are entitled to judgment as a matter of law. Northrup v. City of Toledo Police Dep't , 785 F.3d 1128, 1131 (6th Cir. 2015) ; see Plumhoff v. Rickard , 572 U.S. 765, 768, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014). As the opponent of summary judgment, Green gets the benefit of all reasonable inferences from the record. Northrup , 785 F.3d at 1131.
Equal protection. Green claims that the police officers discriminated against her based on race and sex. More specifically, she alleges that Specialist Birberick did not ask for her account of the crash because she is a black woman but asked for Patterson's account of the accident because he is a white man. Detective LaBrosse and Sergeant Bassett's follow-up investigation, she adds, revealed a similar bias.
The legal premise of her claim is correct. The Equal Protection Clause forbids the State from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. So too do § 1983 and § 1985, which prohibit state employees from violating a person's constitutional rights in the first instance, and conspiring to deprive someone of equal protection in the second. The upshot for purposes of this case is that a *285 party alleging race or sex discrimination must show that the challenged law-enforcement practice "had a discriminatory effect and was motivated by a discriminatory purpose." Cornwell v. Bradshaw , 559 F.3d 398, 411 (6th Cir. 2009). And to prove a discriminatory effect, the plaintiff must show that similarly situated individuals were not subject to the challenged police actions. See Abdul-Khaliq v. City of Newark , 275 F. App'x 517, 521 (6th Cir. 2008).
The factual premise of her claim, however, is incorrect. Green and Patterson were not similarly situated, and those differences justified the way the officers responded to the accident. Birberick testified that he did not ask Green what happened because Officer Maya told him she couldn't remember. All of the evidence, including Green's own testimony, confirms Maya's summation: She was "dazed," "confused," "out of it," "disoriented," and struggling to respond to questions. R. 185-3 at 6; R. 185-6 at 7; R. 185-19 at 2. On top of that, she lay on the ground, visibly injured, and in intense pain. Patterson by contrast was on his feet, uninjured, and ready to describe the collision. Birberick had ample reason to ask Patterson what happened but not to ask Green the same.
Green protests that we are required to accept as true her assertion that she would have given a statement if asked. But that assertion appears in an affidavit that (apparently) never made it into the summary judgment record before the district court. The relevant point at any rate isn't whether Birberick could have coaxed Green's story out of her had he tried; it's whether he had good reason to leave her alone. No material-fact dispute clouds that issue.
Pushing the point one step further, Green invokes the testimony of Douglas Harris, who was at the scene and who allegedly testified that Green could communicate and that no police officer came to talk to her. But a perusal of Harris's testimony does not turn up any such statement. Harris in fact said that he did "[n]ot really talk[ ]" to Green because "she was in a daze," and that he left the scene without attempting to speak to anyone. R. 196-2 at 8. In the absence of any differential treatment of similarly situated individuals, Green's equal protection theories of relief fail as a matter of law.
Access to courts. Green also claims that Specialist Birberick's failure to solicit statements from witnesses at the accident scene crippled her lawsuit against Patterson, forcing her to settle for a lower amount-$ 95,000-than she deserved. Here, too, the legal predicate of her claim is correct but the factual predicate is not.
The Constitution protects an individual's access to the judicial system-the right to bring a non-frivolous claim in a court of law. See Christopher v. Harbury , 536 U.S. 403, 415 n.12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). That right extends to protection from government conspiracies to destroy evidence if those actions prevent a plaintiff from having an "adequate remedy on the underlying claim." Flagg v. City of Detroit , 715 F.3d 165, 173 (6th Cir. 2013) ; see Swekel v. City of River Rouge , 119 F.3d 1259, 1262 (6th Cir. 1997). At the same time, a difference exists between an "active concealment" or destruction of evidence on the one hand and a failure to "pursue all possible leads" on the other. Kelso v. City of Toledo , 77 F. App'x 826, 832-33 (6th Cir. 2003) ; see Flores v. Satz , 137 F.3d 1275, 1278 & n.7 (11th Cir. 1998) (per curiam). Mere "laxity in investigation" is not a constitutional violation. Kelso , 77 F. App'x at 833.
This case falls (at worst) on the "mere laxity" side of the line. As in Kelso , "[t]he police might have discovered greater evidence [to support the plaintiff's state *286 claim] had they investigated further." Id. at 832-33. But no one claims that Birberick took witness statements and then destroyed them, or that he deleted case notes or log sheets to deprive Green of favorable evidence. See Flagg , 715 F.3d at 169-71, 178 ; Swekel , 119 F.3d at 1260, 1264.
Failure to solicit additional witness statements, when the physical evidence supports the only account offered at the scene, is a sizeable step removed from that problem. Still further removed is the failure to canvas for the identity of additional witnesses. No witnesses approached Birberick or Maya. It appears that no witnesses remained at the scene by the time Birberick came over to Green, as the friendly drivers who helped Green out of her car left when the paramedics put her in the ambulance, and Birberick came over only afterwards. On this record, no cognizable access-to-the-courts claim exists.
Municipal liability. Green adds that the police department maintains an unconstitutional policy of not investigating citizen complaints if they think a lawsuit is in the offing. But because her related claims against the officers fail on the merits, her municipal liability claim premised on those claims necessarily fails as well. City of Los Angeles v. Heller , 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam); D'Ambrosio v. Marino , 747 F.3d 378, 391 (6th Cir. 2014).
Motion to amend the complaint. Green separately challenges the court's denial of her motion to file what would have been her seventh complaint. The Civil Rules grant plaintiffs the chance to file one no-questions-asked amended complaint. Fed. R. Civ. P. 15(a)(1). After that, they need permission, which the court should "freely" grant in the ordinary course, id. at 15(a)(2), but which it may deny for a host of reasons-undue delay being one of them, see Foman v. Davis , 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Abuse of discretion is the watch phrase on appeal. Id.
After filing her original complaint and her first amended complaint, Green filed two more without permission. After that, however, the court gave her a strict deadline for any more amendments. She timely moved for another, but then filed a different version before the court granted her motion. Nine months later (over a year after the lawsuit began), Green moved to file yet another amended complaint, her seventh in all, this time seeking to add five defendants, all of whom she knew about from the outset of the case. Because the Federal Rules command just one free pass, not seven, and because she did not have a good explanation for the last amendment, the district court did not abuse its discretion in denying Green's motion.
Discovery sanctions. Green appeals the court's denial of her motion for discovery sanctions under Civil Rules 26 and 37, and 28 U.S.C. § 1927, as well as under the court's inherent authority, Chambers v. NASCO, Inc. , 501 U.S. 32, 43-44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). We review for abuse of discretion, id. at 55, 111 S.Ct. 2123 ; see Cooter & Gell v. Hartmarx Corp. , 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), and find none. The court reasonably explained that it would not impose sanctions because the defendants eventually produced the materials Green wanted, because none of the late-produced materials affected the case's outcome, and because Green's counsel contributed his share of unnecessary delay and expense.
Green argues that the court should have analyzed each discovery allegation separately. But the court's explanation for denying sanctions applies to each one. On top *287 of that, Green suggests that the court failed to consider the correct legal standard. The court did not cite the standard, it is true. But that reality does not by itself make the order illegal, and at all events Green never shows how the court's reasoning varied from the proper standard.
Attorney's fees. The defendants cross-appeal on the ground that the court should have imposed attorney's fees on Green. In this setting, a court may award a prevailing defendant reasonable fees, provided the lawsuit was frivolous. 42 U.S.C. § 1988(b) ; Hughes v. Rowe , 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam). Abuse-of-discretion review once again applies. Ne. Ohio Coal. for the Homeless v. Husted , 831 F.3d 686, 702 (6th Cir. 2016). None occurred. The court reasonably denied the defendants' motion on the ground that the discovery and motions practice had been "very contentious, on both sides" and on the ground that "this is not an egregious case." R. 229 at 1, 3.
The defendants counter that (1) Green knew she was dazed at the crash scene and thus knew from the beginning that she was not similarly situated to Patterson, and (2) she should have known the defendants did not conceal any evidence and that accident reports are inadmissible in Michigan courts. That Green did not draw the same legal conclusions from these facts as the defendants, however, does not mean the denial of fees is an abuse of discretion. Yes, a different trial court might have reached a different conclusion. But that reality squares with another reality-that our deferential standard of review permits two opposing decisions both to fall within it.
We affirm.
CONCURRENCE