NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0405n.06

No. 18-2393

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ROBERT DAVIS and D. ETTA WILCOXON,  )
)
    Plaintiffs,  )
)
ANDREW A. PATERSON, JR.,  )
)
    Appellant,  )
)
    v.  )
)
DETROIT DOWNTOWN DEVELOPMENT  )
AUTHORITY and DETROIT BROWNFIELD  )
REDEVELOPMENT AUTHORITY,  )
)
    Defendants-Appellees.  )
)

**FILED**
Aug 05, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

---

BEFORE: SUTTON, GRIFFIN, and READLER, Circuit Judges.

GRIFFIN, Circuit Judge.

As the French proverb goes, "[i]f you've a good case, try to compromise; if a bad one, take it into court." H.L. Mencken, *A New Dictionary of Quotations* 665 (19th prtg. 2001). Plaintiffs Robert Davis and Etta Wilcoxon followed the latter part of that advice before later abandoning their case. But their attorney, appellant Andrew Paterson, went too far. He pursued two frivolous claims and one frivolous motion, necessitating unnecessary legal fees for defendants Detroit Downtown Development Authority and Detroit Brownfield Redevelopment Authority. Both defendants moved the district court to sanction Paterson under 28 U.S.C. § 1927, and the district court did. Paterson now appeals that decision. We affirm.

I.

In 2017, after spending nearly 40 years in the suburbs, the Detroit Pistons prepared to return to Detroit. Then Davis and Wilcoxon sued to stop the move. They claimed, among other things, that the Development Authority had (1) violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by scheming to defraud taxpayers into funding construction of Little Caesars Arena (the stadium where the Pistons planned to play) and (2) deprived Davis of procedural due process by refusing to give him a copy of a document relating to the stadium's financing.

The primary legal dispute between the parties did not last long; one month in, Davis and Wilcoxon voluntarily dismissed the case.

But several satellite claims over sanctions developed and continued well after the dismissal. One such dispute unfolded after Paterson filed an emergency motion seeking a temporary restraining order. Defendants filed a joint response to that motion. And Paterson filed a motion to strike the response, claiming it exceeded the page limit. It did not. He had factored in the cover page, table of authorities, table of contents, and questions presented—sections that, under the Eastern District of Michigan's Local Rules, did not count toward the page limit. *See* E.D. Mich. LR 7.1. So defendants moved for sanctions, calling out Paterson's "fuzzy math" and arguing that the motion to strike was "beyond absurd" and that the emergency motion itself was also patently meritless.

Another satellite sanctions dispute arose shortly after Davis and Wilcoxon dismissed the case. Defendants thought the lawsuit was frivolous, so they filed a motion seeking sanctions for having to defend against it.

The district court granted both motions in part. It ruled that the motion to strike was "clearly without merit" and that Paterson had "needlessly obstructed" the case. It also determined

that the RICO claim and procedural-due-process claim were frivolous. But it saw the emergency motion as no more than "zealous advocacy," and it thought that some claims were not so obviously frivolous that they warranted punishment. For these reasons, the court imposed $13,506.00 in sanctions under 28 U.S.C. § 1927. Because § 1927 applies to attorneys, not the parties they represent, the district court ordered Paterson to pay the award. This appeal followed.

II.

We review a district court's award of § 1927 sanctions for an abuse of discretion. *Green v. City of Southfield*, 925 F.3d 281, 286 (6th Cir. 2019). That occurs when the court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270, 275 (6th Cir. 2010) (citation omitted). Normally, we analyze an appellant's arguments by examining the legal reasons he offers to support his position and explaining why they are sufficient or insufficient—persuasive or unpersuasive.

But this is not a normal case. Here, Paterson does not give us reasons; he gives us conclusions. For example, he says that "the claims as pl[eaded] were not frivolous" and that "[t]he district court's finding that certain claims were frivolous [wa]s simply misplaced." Yet he never tells us *why* that's so. He also asserts that defendants could obtain sanctions for having to file a motion to dismiss the complaint and a response to his motion to strike, but nothing else. Yet he never explains *why* the district court erred when it also accounted for other filings, including a reply brief defendants filed as part of the motion-to-dismiss volley and the two sanctions motions themselves. All he claims is that the district court told defendants they could recover "the fees and costs incurred in responding to the [frivolous] claims . . . in the amended complaint and the motion to strike," and that some of the recovered fees fell outside that category. But nowhere does he

specify how the district court's interpretation of its own order amounted to the use of an erroneous legal standard, the improper application of the right one, or a clearly erroneous factual finding.

Paterson quickly runs out of conclusions, so he shifts to misrepresentations. He claims that one of the law firms representing defendants double billed them, which he argues led to a double recovery when the district court awarded sanctions to compensate them for the attorney's fees his frivolous tactics created. Indeed, he asserts that "[t]here is no plausible explanation" that justifies billing defendants separately for the same legal work. But such an explanation exists, and defendants provided it to the district court: they asked the firm "to split the billing of time spent on a task equally between" them. That meant that if counsel spent two hours on a court appearance, each defendant received a bill for one hour of that time. Paterson further asserts that one law firm representing defendants replaced the other, "presumably due to [] incompetence or lack of expertise or inexperience." This change, he suggests, should have prevented defendants from obtaining sanctions to compensate them for any time that the original firm billed. But no substitution occurred; both firms worked in tandem for much of the case—including every filing the sanctions award reimbursed defendants for. Paterson also asks us to limit any award to the equivalent of "no more than 3 hours!" of defense counsel's time rather than the 50.8 hours the district court credited. We should do so, he asserts, because only three pages of defendants' motion to dismiss—which he says spanned 39 pages—addressed the claims that the district court found to be frivolous. But the motion was 25 pages, and it was this very type of misrepresentation that the district court sanctioned Paterson for making.

Once the misrepresentations are rejected, Paterson turns to victim blaming. Sanctions were improper, he contends, because it was defendants who filed "a multitude of frivolous motions." He even accuses defense counsel of violating the Eastern District of Michigan's Civility Principles.

This appeal, then, is full of legally meaningless attacks and diversions. Nowhere does Paterson provide us with any of what we need to analyze whether the district court erred in sanctioning him and, if not, whether the award was excessive. A party may not present a skeletal argument, leaving the court to put flesh on its bones, *United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016), and here Paterson has not presented any argument at all—much less a skeletal one.

To be sure, Paterson does make two points that are closer to fully formed arguments. First, he argues that sanctions are inappropriate because he stopped pursuing the frivolous RICO and procedural-due-process claims when plaintiffs dismissed their complaint. But he provides no legal authority suggesting that an attorney may use frivolous legal positions to run up legal costs for an opposing party, without rebuke, so long as he abandons them before a court can reject them. And § 1927 applies to attorneys who multiply legal proceedings unreasonably or vexatiously. What matters, then, is the multiplication of the proceedings, not any later voluntary reduction of them.

Second, Paterson argues that sanctions are also inappropriate because he did not act in bad faith—something that's necessary for a court to use its inherent powers to sanction a party. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). But the district court said it was "stop[ping] short of finding any bad faith" and awarding sanctions under its inherent authority. Instead, the court sanctioned Paterson under § 1927, alone, which does not require a finding of bad faith, *Dixon v. Clem*, 492 F.3d 665, 679 (6th Cir. 2007). So by raising this argument, he is complaining about something that did not occur.

III.

To warrant reversal, Paterson needed to show that the district court used the wrong legal standard, misapplied the right one, or made clearly erroneous factual finding.  He has not done so.  Therefore, we affirm the sanctions award.