**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0588n.06

No. 19-1285

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 04, 2019
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| HOWARD BARTLETT; CHRISTINA BARTLETT, )<br><br>    Plaintiffs-Appellants, )<br>)<br>v. )<br>)<br>HEIDI E. WASHINGTON, et al., )<br>)<br>    Defendants-Appellees. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

BEFORE: GRIFFIN, STRANCH, and DONALD, Circuit Judges.

GRIFFIN, Circuit Judge.

Howard Bartlett worked for the Michigan Department of Corrections ("MDOC") as a corrections officer. When his superiors discovered that he falsified records to show that he had conducted mandatory pat-down searches of inmates, when he actually had not, the MDOC fired him. Bartlett and his wife sued, bringing claims against individuals employed by the MDOC and the union that formerly represented Bartlett. The district court dismissed all of plaintiffs' federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and declined to exercise supplemental jurisdiction over their state-law claims. We affirm.

I.

Bartlett,[1] who is Caucasian, worked for the MDOC for over twenty years. At all times relevant here, he worked the third (or "midnight") shift at the Gus Harrison Correctional Facility

---

[1]Because Howard Bartlett is the sole plaintiff asserting federal claims, we refer to him as "Bartlett" for convenience.

in Adrian, Michigan. An Adrian Correctional Institutions Operating Procedure required corrections officers to "conduct pat-down or clothed body searches of a minimum of five (5) randomly selected prisoners per shift" and record these searches in the "Daily Prisoner Shakedown Report" and the "Shift Prisoner Shakedown Log Book." While Bartlett claims that third-shift officers were exempt from this requirement, the exhibits attached to his complaint show that was only true for the MDOC-wide policy. At Bartlett's place of employment, "Warden Klee directed third shift Officers to conduct a thorough pat-down or clothed body search of at least five randomly selected prisoners and staff ha[d] been doing this for several years."

On April 3, 2017, Bartlett worked his usual shift and documented in the "Daily Shakedown Log" that "at 2312 hours he performed (5) five individual pat searches upon prisoners in accordance with policy," listing their names and inmate numbers. At some subsequent point, an anonymous prisoner sent a kite[2] to the deputy warden, alleging that on April 3, 2017, he witnessed "Howard Bartlett pull[ ] the shakedown log book and master count board and fill[ ] out the shakedown book as if he had done the actual shakedowns when he in fact did not shake down anyone." This triggered an investigation by prison officials.

A review of footage from surveillance cameras showed Bartlett writing in the "Common Area Shakedown Log" at a time when no searches in that area had yet occurred. The footage also "reflect[ed] that at no time were any prisoners searched in accordance with policy, procedures or facility requirements during the period of time that Officer Bartlett documented that he" had conducted the pat-down searches. Prison officials then questioned Bartlett, who admitted "that he willfully neglected to perform the (5) five individual pat searches upon prisoners despite the fact that he documented that he had performed them when in fact he did not complete them." The officials concluded that Bartlett had thus "violated Departmental Work Rule #27, Dereliction of Duty and Departmental Work Rule #47, Falsifying, Altering, Destroying, Removing Documents or Filing a False Report." Bartlett's employment was terminated soon after.

---

[2]"Kite" is a "slang term for [a] prison letter." *United States v. Lewis*, 660 F. App'x 396, 409 (6th Cir. 2016).

Bartlett's union, the Service Employees International Union, Local 526M ("the Union"), filed a grievance on his behalf challenging the termination. After reviewing the grievance file and determining that "the Department could sustain its burden of proof before an arbitrator," the Union's grievance committee "voted not to send the grievance to arbitration." Bartlett appealed that decision to the Union's state executive board, which "uph[e]ld the Committee's decision not to arbitrate the grievance." (Emphasis omitted).

Plaintiffs filed a complaint in the United States District Court for the Eastern District of Michigan. Their second amended complaint named seven defendants: Heidi Washington, Sherman Campbell, and Sharon Opel (the "State defendants"); and Scott Waggoner, Jeff Foldie, William Badger, and the Union (the "Union defendants"). The complaint pleaded five counts: equal protection violations by the State defendants under 42 U.S.C. § 1983; conspiracy between all defendants under 42 U.S.C. §§ 1985(3) and 1986; breach of the duty of fair representation by the Union defendants; civil conspiracy under Michigan law; and loss of consortium under Michigan law.

In support of the § 1983 claim, the complaint alleged that Bartlett and an African-American corrections officer identified as "John Doe" had both been accused of identical instances of misconduct, and that John Doe was "disliked" by several prison officials and eventually fired. Bartlett alleged that he was fired "in order to provide a defense as to any civil rights lawsuit by Correctional Officer, John Doe," "even though [Bartlett] had no disciplinary record." Bartlett also asserted that female corrections officers at another prison had committed the same rules violations but were not disciplined. Additionally, the complaint alleged that the Union defendants and the State defendants had conspired together to have Bartlett fired.

Both groups of defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court found that the complaint's federal claims "fail[ed] to satisfy . . . basic pleading requirements" and dismissed them. *Bartlett v. Washington*, No.

18-11508, 2019 WL 918392, at *6 (E.D. Mich. Feb. 25, 2019). The court also declined to exercise supplemental jurisdiction over plaintiffs' state-law claims. Plaintiffs timely appealed.[3]

## II.

We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6).

*In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 275 (6th Cir. 2019). Accepting all allegations in the complaint as true, and drawing all reasonable inferences in Bartlett's favor, *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016), "we must determine whether the allegations plausibly state a claim for relief," *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 308 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But we need not "accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted), we may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## III.

We begin by addressing Bartlett's § 1983 claim. Section 1983 "prohibit[s] state employees from violating a person's constitutional rights," *Green v. City of Southfield*, 925 F.3d 281, 284 (6th Cir. 2019), including those guaranteed by the Equal Protection Clause, which prohibits states from denying to "any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV. Here, "[w]e review [Bartlett's] § 1983 discrimination claim[ ] brought under the Equal

---

[3]Bartlett initially appealed the district court's dismissal of his claim for breach of the duty of fair representation, but he has expressly withdrawn any appeal of that claim in his brief.

Protection Clause using the same test applied under Title VII." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019).

A.

Starting with the race and sex discrimination claims, Bartlett waived them before the district court. Faced with the complaint's noticeable lack of clarity, the State defendants assumed, for purposes of their motion to dismiss, that Bartlett had grounded his § 1983 claim in discrimination on the basis of race and sex, and in a class-of-one theory. In his response, Bartlett stated that he "is not alleging, nor is he required to allege either reverse – race or reverse-sex discrimination; however, if the Court so requires, Plaintiff can prove a *prima facie* case of race discrimination, if this court determines that proof must be offered as to said discrimination." (Emphasis omitted). Later in his response, Bartlett elaborated on the sex discrimination discussion contained in the complaint, with the following preface: "The Defendant's next argument is that the Plaintiff has alleged, but cannot demonstrate, a *prima facie* case of reverse-sex discrimination. Insofar as the court believes that Plaintiff has alleged reverse-sex discrimination, Plaintiff hereby incorporates his arguments in Part I and part I-A above."

This language indicates that Bartlett disclaimed any reliance on a race or a sex discrimination theory, and looked to the district court for instructions as to whether he should continue to address them.[4] We think this constitutes "the intentional relinquishment or abandonment of a known right." *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697 (6th Cir. 2019) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Our conclusion is bolstered by another statement from Bartlett's response in the district court, that he "does not specifically

---

[4]Our review is complicated by Bartlett's counsel's tendency to restate defendants' arguments and the district court's rulings below without quotation marks or citation, which can have the effect of the reader mistakenly taking them as his own statements. For example, Bartlett's brief on appeal states that "Plaintiff has not alleged either reverse race discrimination or reverse sex discrimination in his Court [sic] I; wherein he alleges a violation of the 14th Amendment to the United States Constitution claiming he was denied 'equal protection of the laws.'" Elsewhere, he seems to argue the opposite, though his brief is not entirely clear on this point. We admonish Bartlett's counsel to properly attribute quotations and opposing parties' arguments in the future.

allege to be a member of a particular class" and that "[t]he actions of the Defendants are arbitrary[ ] and . . . malicious in nature as they have been applied to him on an individual basis." A "plaintiff is the master of her complaint and may choose the remedies she wishes to request." *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 912 F.3d 316, 331 (6th Cir. 2018). It is thus up to the plaintiff, not the district court, to say what the complaint means and which claims it does and does not allege. Here, Bartlett told the district court that he was not alleging race discrimination or sex discrimination, and then stated that he was not a member of a particular class. We take Bartlett at his word and enforce his explicit waivers of both claims.

B.

Bartlett's class-of-one claim is a bit more complicated. In his brief, Bartlett simultaneously argues that the district court erred "when it determined that Bartlett's class of one equal protection claim must be dismissed" and that "nowhere in the Complaint does Bartlett state that he is alleging discrimination under a class of one theory of equal protection." (Internal quotation marks and emphases omitted.) According to Bartlett, he is instead "claiming . . . that Defendants applied its [sic] uniform rules and regulations differently against him as they applied the uniform rules and regulations, for the same, similar or worse conduct." Later, he characterizes this claim as "alleging that the rules and regulations of the Department of Corrections were applied differently in the State's determination to fire Plaintiff as they were applied to other similarly situated employees of the same classification."

Bartlett essentially pleads and describes a class-of-one claim while insisting that it is something else. In a class-of-one claim, a "plaintiff alleges that she has been intentionally treated differently from others similarly situated," *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), and that either "the government actors had no rational basis for the difference" or the "challenged government action was motivated by animus or ill-will," *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (citations omitted). Here, the district court dismissed the claim because a class-of-one theory of discrimination is "not recognized in the public employment context." *Bartlett*, 2019 WL 918392, at *3 (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591

(2008)). In *Engquist*, "the Supreme Court held that an equal protection cause of action based on arbitrary conduct against a 'class of one' would not extend to claims of government employees against their employers." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 539 (6th Cir. 2008) (citing *Engquist*, 553 U.S. at 609). *Engquist* applies here to bar Bartlett's class-of-one theory, regardless of what he calls it.

IV.

Next, we turn to Bartlett's conspiracy claims under §§ 1985(3) and 1986. "Section 1985(3) creates a cause of action for a conspiracy between two or more persons to deprive another of the equal protection of the laws." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). The district court found that "[b]ecause Bartlett has insufficiently pled his underlying equal protection claim, his conspiracy claims must be dismissed." *Bartlett*, 2019 WL 918392, at *4. We agree. "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). So if there is no underlying constitutional violation, there can be no claim for conspiracy either. *See, e.g.*, *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013) ("Because there was no Fourth Amendment violation, there is no conspiracy claim based on State Defendants' acts."); *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) ("Wiley cannot succeed on a conspiracy claim because there was no underlying constitutional violation that injured her."); *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007) ("Absent any constitutional deprivation, Bauss cannot establish a case of conspiracy against Defendants.") Because Bartlett has either failed to state or expressly waived his claims of equal protection violations under § 1983, his conspiracy claim based on those alleged violations must fall as well.

Bartlett's § 1986 claim fails as a result. "Section 1986 is designed to punish those who aid and abet violations of § 1985." *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (quoting *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980)). If a court "find[s] no violation of § 1985," then "there can be no violation of § 1986." *Id.*

V.

Plaintiffs also appeal the district court's dismissal of their claims for civil conspiracy and loss of consortium under Michigan law. After dismissing all of the complaint's federal claims, the district court declined to exercise supplemental jurisdiction over these state-law claims. *Bartlett*, 2019 WL 918392, at *5. We review that decision for abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).

A district court "may decline to exercise supplemental jurisdiction over a claim" grounded in state law if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). They do here. This is not the rare situation in which "a district court should retain supplemental jurisdiction even if all of the underlying federal claims have been dismissed." *Gamel*, 625 F.3d at 952. And plaintiffs do not provide any compelling reasons to depart from the usual practice. We therefore affirm the district court's decision to decline to exercise supplemental jurisdiction over these claims.

VI.

For the reasons discussed above, we affirm the district court's judgment.