NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0338n.06

No. 24-1953

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CLEVELAND HARVILLE,

     Plaintiff-Appellee,

v.

CITY OF WARREN, MICHIGAN; JAMES
TWARDESKY,

     Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 11, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before: SILER, KETHLEDGE, and BUSH Circuit Judges.

KETHLEDGE, Circuit Judge.   In October 2019, police in Warren, Michigan, began investigating allegations of hazing on the De La Salle Collegiate High School football team. Prosecutors ultimately filed criminal charges against seven football players—including the plaintiff here, Cleveland Harville.  The charges against Harville were later dismissed.  Harville thereafter sued the police department and its lead detective, James Twardesky, asserting claims under 42 U.S.C. § 1983.  The defendants moved for summary judgment, which the district court denied.  We reverse and remand.

I.

We recite the facts in the light most favorable to Harville.  *See Johnson v. Jones*, 515 U.S. 304, 319 (1995).  De La Salle Collegiate High School is an all-boys Catholic high school in Warren, Michigan.  Its football team played games on Friday nights and had a tradition of hosting team dinners the night before.  At these team dinners, upperclassmen would often restrain

underclassmen while poking them in the buttocks with a broom—a practice known as "broomsticking."

Entering the fall of 2019, Cleveland Harville was a senior on the De La Salle football team. The season was set to begin on Friday, August 30, so the team had the first of its weekly team dinners the night before. One of Harville's teammates, John Hunt, Jr., alleged that, at this first team dinner, Harville tackled him as part of a broomsticking incident. Harville counters that he was not even present for the dinner, though everyone agrees that he played in the season opener the next night and that, the next week, he dropped out of school.

In late September, a parent complained to school officials about broomsticking at the football team's Thursday dinners. In October, school officials canceled the remainder of the football season and referred the matter to the Warren police department, which began a criminal investigation. Detective James Twardesky led a team that interviewed nearly 60 students and several school officials and coaches. In early November, he interviewed John Hunt, Jr., who said that Harville had tackled him on one occasion, but that he had gotten away before any broomsticking occurred. Meanwhile, on November 7, the alleged victim whose parents first complained about the practice, Ethan Desjardine, formally waived prosecution because—in his father's words—he "didn't feel he was assaulted" and "did not want to see criminal charges against anyone." Other potential witnesses were likewise reluctant to cooperate with the criminal investigation.

Yet by the end of November, Twardesky began working with prosecutor Josh Sparling to determine whether they had evidence that could support criminal charges. By January 2020, Twardesky's investigation had identified three potential victims of broomsticking: Desjardine, Hunt, and another player named Nick Yee. On January 24, Sparling and Twardesky met with

those three students and their parents, and encouraged the students "to have the courage to stand up and point out their attackers" so that this practice would stop in the future. Hunt thereafter requested another interview with Twardesky. On January 29, Hunt and his parents met with Twardesky and presented a signed statement—handwritten by his father "at [Hunt's] direction"—that said,

> Before the first game of the year, after a team dinner, I was grabbed by Cleveland Harvell [sic] from behind. Cleveland put me in a reverse head lock and I was struggling to get away. Michael Young started coming at me but before he got to me, several teammates grabbed me + took me to the ground. I was hit with a broomstick in my upper thigh. I did not see who hit me with the broomstick. I was focussed [sic] on getting away from Cleveland. I was left on the locker room floor. Clayton Beleshi tried to check on me but I did not talk to him. I previously spoke to Detective Twardesky and gave a verbal statement regarding Ethan Desjardine. I told detective Twardesky that I was able to get away from Cleveland because I was embarrassed and afraid to tell my parents the truth.

At least two other students later confirmed that they had seen Hunt's assault—though neither mentioned Harville.

On February 5, Twardesky sent to Sparling warrant requests for Harville, Young, and two other players allegedly involved in Hunt's assault. Although Hunt's statement said the assault had occurred the night before the first football game, Twardesky's warrant application listed the date of the assault as September 5—the night before the second football game (by which point Harville had left the team). Twardesky later said he knew not why he had listed September 5 instead of August 29. Two weeks after receiving the warrant requests, Sparling concluded that he had probable cause to charge Harville, Young, and the two other players for assaulting Hunt; and he charged all four with misdemeanor assault and battery. Harville turned himself in on February 25. In May, Sparling dismissed the charges against Harville. Sparling also later dismissed the charges against the remaining suspects in Hunt's assault.

Harville thereafter sued Twardesky and the City of Warren police department under 42 U.S.C. § 1983, alleging two Fourth Amendment violations—false arrest and malicious prosecution—a Fourteenth Amendment Equal Protection violation, and gross negligence under state law. Twardesky moved for summary judgment based on qualified immunity, which the district court denied. This appeal followed.

II.

We review the district court's decision de novo. *Erickson v. Gogebic County*, 133 F.4th 703, 707 (6th Cir. 2025).

Twardesky argues that the district court was wrong to conclude that factual disputes meant he was not entitled to qualified immunity. A plaintiff bears the burden of demonstrating that an officer is not entitled to that defense. *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009). At the summary-judgment stage, that means the plaintiff must point to evidence that could support a finding that the officer violated a constitutional right and that this right was clearly established—meaning that the caselaw would have made clear to the officer that his conduct was "unlawful in the situation he confronted." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

A.

Twardesky first argues that he was entitled to qualified immunity from Harville's false-arrest claim. A citizen's right to be free from arrest without probable cause is clearly established. *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007). Probable cause is "reasonable grounds for belief" that a crime has been committed. *United States v. Jones*, 55 F.4th 496, 501 (6th Cir. 2022). Officers are thus immune from suit for false arrest unless it was apparent that "the circumstances with which [the officer] was confronted did not constitute probable cause." *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987). Whether the undisputed facts before an

officer establish probable cause is a question of law that a court decides. *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020).

Here, the primary basis for Twardesky's probable-cause determination was Hunt's statement that Harville had put him in a headlock and taken him to the ground, where other teammates then assaulted him with broomsticks. A single eyewitness's identification—especially when that witness is the victim—can be enough to establish probable cause unless, at the time of the identification, an officer has some reason to doubt the eyewitness's credibility. *Ahlers v. Schebil*, 188 F.3d 365, 370-71 (6th Cir. 1999).

Harville contends that Hunt was not a credible witness because his account had changed as to whether he had, in fact, been a victim of broomsticking. Specifically, during Hunt's initial interview with police, he said that Harville had "tried like putting me in like an armbar" and "took me to the ground," but that "I was able to like get away." Later—after the meeting with prosecutors and the other potential victims—Hunt said he had, in fact, been broomsticked after Harville tackled him.

But Hunt's story never changed as to the material facts about the incident and about Harville's role. In both accounts, Harville tackled him, and Hunt feared that other teammates would broomstick him. In the first version, he was able to escape before the broomsticking happened; in the second, he was not. Meanwhile, the offense Harville was charged with was assault. *See* MCL § 750.81(1). Under Michigan law, assault is "an attempt to commit a battery" or "an unlawful act which places another in reasonable apprehension" that he will be the victim of a battery. *King v. City of Rockford*, 97 F.4th 379, 400 (6th Cir. 2024). Harville disputes neither that broomsticking amounts to a battery, nor that being tackled in the locker room while others approached with brooms would cause Hunt "reasonable apprehension" of being broomsticked.

And in both versions of Hunt's story he said that Harville tackled him while other teammates approached with brooms. That common aspect of Hunt's account, if credible, would establish probable cause that Harville had assaulted Hunt. *See United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006).

Thus, to prevail here, Harville would need to show some reason "to believe that [Hunt] was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers*, 188 F.3d at 370. And the inconsistency between Hunt's two accounts—in the first he was broomsticked, in the second he was not—did not so impeach his statements as to render even the consistent parts—namely his description of Harville's alleged assault—unworthy of belief. For one thing, Hunt acknowledged that inconsistency and provided an explanation for it: he had initially been embarrassed to admit to his parents that he was an assault victim. For another, the record includes evidence that the initial denial was "common" among abuse victims. Twardesky therefore had probable cause that Harville had assaulted Hunt. *See Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003).

That Harville says he was driving home from a baseball game at the time of the alleged assault does not change this conclusion. Twardesky had no reason to know of that potential alibi at the time he gave Sparling the warrant application. *See Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). Nor does the warrant application's mistaken reference to September 5 (as the date of the assault) affect this conclusion. For on this point Hunt's testimony was consistent: his written statement placed the incident as "[b]efore the first game of the year," and, during his initial interview, he said that Harville "doesn't go here anymore"—implying that the incident had occurred before Harville dropped out. The warrant application's mistaken reference to September

5 was simply that, rather than any inconsistency in Hunt's statement itself. Twardesky is entitled to qualified immunity from Harville's false-arrest claim.

B.

Twardesky argues that he is likewise entitled to qualified immunity from Harville's malicious-prosecution claim. To prevail on that claim, Harville must demonstrate, among other things, that Twardesky not only lacked probable cause for the prosecution, but knew that he lacked it. *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014). For the reasons stated above, Harville can show neither. Twardesky is therefore entitled to qualified immunity on this claim too.

C.

Twardesky argues that he was entitled to qualified immunity from Harville's equal-protection claim. To show a violation of the Fourteenth Amendment's Equal Protection Clause, a plaintiff must show that an officer's conduct "had a discriminatory effect and was motivated by a discriminatory purpose." *See Green v. City of Southfield*, 925 F.3d 281, 284 (6th Cir. 2019).

Harville's claim is that Twardesky deliberately sought charges against only black players, not white ones. But Harville has no evidence that eyewitnesses had identified any white players as assailants. He therefore lacks evidence that would allow a reasonable jury to conclude that Twardesky had a discriminatory purpose or that his conduct had a discriminatory effect. Twardesky is entitled to summary judgment on this claim.

D.

Finally, the City of Warren argues that it was entitled to summary judgment on Harville's claim that the city was liable for a false arrest. Ordinarily, we lack jurisdiction to consider the denial of a motion for summary judgment on an interlocutory appeal, but we may do so if our resolution of the qualified-immunity issue "necessarily resolves the pendent claim as well."

*Martin v. City of Broadview Heights*, 712 F.3d 951, 963 (6th Cir. 2013). That is the case here: Harville lacks evidence of any constitutional violation, so there is no basis for municipal liability. *See Robertson*, 753 F.3d at 622. The district court therefore should have granted summary judgment to the city on this claim.

E.

That leaves only Harville's state-law claim of gross negligence. We leave it to the district court to decide in the first instance whether to exercise supplemental jurisdiction over this claim, given that the defendants are entitled to summary judgment on the federal claims that give rise to the district court's jurisdiction. *See* 28 U.S.C. § 1367(c)(2).

*    *    *

The district court's September 30, 2024, order is reversed as to all of Harville's federal claims, and the case is remanded for a determination whether to exercise jurisdiction over the state-law claim.